JAMES H. REED *vs.* A. E. LITTLE COMPANY & others.

Suffolk.     January 29, 1926. — June 28, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To relieve from results of fraud, To rescind contract. *Contract,* Rescission. *Fraudulent Representations. Corporation,* Officers and agents.

Allegations in a bill in equity by a mechanic and inventor against a corporation were in substance that, when about sixty years of age, the

plaintiff made contracts in writing with the defendant in which he agreed to assign to it certain patents and applications for patents connected with the defendant's business and that, if the defendant should sell any of the patents, the plaintiff would receive ten per cent of the selling price, or $10,000 in place of ten per cent, as he might elect. Three years later at the conclusion of negotiations with another corporation, the defendant's president received an offer from it for the purchase of the patents for $1,000,000 and certain stock in a corporation to be formed which might later be sold for $2,000,000 more. Thereafter, without disclosing these facts to the plaintiff, the defendant's president stated to the plaintiff that the defendant desired to be relieved from its obligation to pay the plaintiff ten per cent of the purchase price of the patents and wished the plaintiff to sign a proposed contract to accept in lieu of the ten per cent a sum between $50,000 and $75,000. The plaintiff was without experience in business and financial affairs and was ignorant of the commercial value of the patents referred to. He had acquired great confidence in the ability, business capacity and honesty of the defendant's president and had come to believe that the defendant's president was friendly to him and a man in whom he might have absolute confidence and to whom he might safely apply for advice and counsel touching matters outside the scope of the plaintiff's experience. The defendant's president was fully aware of these facts, was familiar with the value of the patents, and was a man of wide business experience, marked ability and great shrewdness. He acted at all times as agent and in behalf of the corporation. The plaintiff asked the defendant's president to advise him as a friend in his interest in respect to the matters contained in the agreement and whether it was for the plaintiff's best interest to sign such an agreement, and the president falsely stated to the plaintiff that he did not believe an offer of over $200,000 would be made for the patents and that by signing the proposed contract the plaintiff would receive a larger sum than he would receive if he insisted on his rights under the original contracts and advised that in his opinion it was for the plaintiff's best interest that he should sign. The plaintiff signed the contract and received from the defendant $50,000 only. The defendant then carried out the sale to the second corporation as agreed upon. Learning thereof, the plaintiff sought to rescind his later contract and to have the defendant account to him on the basis of the original contract. *Held,* that

(1) The defendant corporation, having accepted the benefits of its president's fraud, was liable to the plaintiff even though the fraud had not been explicitly authorized;

(2) The defendant could not defend against the fraudulent acts committed in its behalf by contending that its president, by reason of his official position, had a fiduciary duty to it; the fact that he held such fiduciary relation did not prevent the plaintiff as a matter of law from placing reliance upon him as a friendly adviser in the plaintiff's own interests;

(3) It appearing that the plaintiff reposed confidence in the integrity of the defendant's president and that the president voluntarily assumed and accepted the confidence, the duty devolved upon the president to

advise honestly and to make full disclosure; that duty not being performed, the plaintiff was entitled to the equitable relief he sought;

(4) In the circumstances, tender of a return of the money received by the plaintiff was not required.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 5, 1925, seeking rescission by reason of fraud of certain contracts in writing made by the plaintiff with the defendant corporation and an accounting under contracts previously made by the parties.

The defendants filed an answer containing a demurrer. So much of the answer as was a demurrer was heard by *Carroll*, J., and was overruled. At the request of the plaintiff, the single justice reported the ruling to the full court under G. L. c. 214, § 30, for determination before further proceedings in the suit.

The case was argued at the bar in January, 1926, before *Rugg*, C.J., *Pierce, Wait, & Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices except *Carroll*, J.

*S. L. Whipple*, (*E. C. Park* with him,) for the defendants.

*R. Spring*, ( *R. C. Evarts* with him,) for the plaintiff.

SANDERSON, J. This case comes up on a report by a single justice of this court after he had overruled so much of the answer as was a demurrer.

The plaintiff was a mechanic and inventor and was asked by A. E. Little, president of the defendant company acting as its agent, to enter the company's employment and assign to it certain patents and applications for patents on a lockstitch machine in accordance with the terms of a written contract. The contract was dated November 4, 1920, and provided, among other things, that the plaintiff should give all his time and best efforts to perfecting the patent; that the company's decision as to disposing of the same should be final; that the plaintiff would receive $75 per week and if the company should sell any of the patents the plaintiff would receive ten per cent of the selling price, or $10,000 in place of ten per cent, as he might elect. The plaintiff entered the employment of the defendant company and thereafter executed another contract with it, presented by Little, and dated August 7, 1923, by which the plaintiff agreed, in sub-

stance, to assign to the company all applications for patents on improvements made by him on certain machines named therein and on any other machines connected with the manufacture of shoes made by him while in the employ of the company. The agreement further provided that the plaintiff's interest in these machines should be the same as his interest in the lock stitch machine under the first agreement. The plaintiff in all respects performed his part of the contracts.

In 1923 the plaintiff was about sixty-three years of age, without experience in business and financial affairs and was ignorant of the commercial value of the patents referred to. He had acquired great confidence in the ability, business capacity and honesty of Little and had come to believe that Little was friendly to him and was a man in whom he might have absolute confidence and to whom he might safely apply for advice and counsel touching matters outside the scope of the plaintiff's own experience. Little was fully aware of all these facts, and at all times referred to in the bill of complaint he acted as agent of and in behalf of the defendant company, was familiar with the value of patents, and was a man of wide business experience, marked ability and great shrewdness.

The A. E. Little Company, acting through its president, for some time had been engaged in negotiations with the United Shoe Machinery Company for the sale of the patents, and on December 17, 1923, had received an offer from that company for the purchase of the patents on substantially these terms: that they should be conveyed to a corporation to be organized; that about fifty-one per cent of the shares of such new corporation should be issued to the defendant company, and the balance to the United Shoe Machinery Company in consideration of the payment by it of $1,000,000 to the defendant company; and that the United Shoe Machinery Company would have the right and option to buy the shares to be issued to the defendant company within a certain period for $2,000,000. The offer had not been accepted on the date last mentioned, but the company was in position to accept it, or if the negotiations had not progressed

to that point they had reached a stage where the defendant company and Little well knew and firmly believed that the patents could be sold for a consideration of approximately $3,000,000 and that such sale was imminent and likely to take place within a brief period.

On December 17, 1923, the plaintiff was called to the office of the company and Little then stated to him, in substance, that the company desired to be relieved from its obligation to pay the plaintiff ten per cent of the purchase price of the patents and wished the plaintiff to sign a proposed contract then presented to him. The plaintiff read the proposed contract, and, reposing trust and confidence in Little, asked him to advise him as a friend in the interest of the plaintiff, in respect to the matters therein contained, and whether it was for the plaintiff's best interest to sign such an agreement and accept in lieu of the right to ten per cent of the sale price of the patents, a sum as therein stated between $50,000 and $75,000 to be paid within three months. Little thereupon pretended and undertook to advise the plaintiff as his friend, and in the plaintiff's interest, and advised him to sign the proposed contract, stating that in his opinion it was for the plaintiff's best interest that he should sign. The plaintiff, believing the advice to be truthful and disinterested, accepted the same as given in his interest; but Little, intentionally omitting to disclose to the plaintiff any of the facts relative to the negotiations for the sale of the patents then pending as hereinbefore set forth, stated to the plaintiff that he did not believe an offer of over $200,000 would be made for the patents and that by signing the proposed contract the plaintiff would receive a larger sum than he would receive if he insisted on his rights under the original contracts.

In so advising and stating the facts and opinions, and in failing to disclose the true facts in respect to the negotiations, Little did not act as the plaintiff's friend or in his interest, but solely on behalf of the defendant company, and with the intent and purpose of defrauding the plaintiff by taking advantage of the existing trust and confidence; and by concealing the truth and making affirmative statements of fact

he intended to induce and succeeded in inducing the plaintiff to accept, in lieu of his rights under the original contracts, a sum far less than the amount which he well knew the plaintiff would be entitled to receive in the event that he did not sign the proposed contract.   All of Little's statements of fact were made to deceive the plaintiff, and the statements of his opinion and belief were opposite to the real opinions and belief then held by him, and were made for the purpose of deceiving and defrauding the plaintiff.   In reliance upon these statements and in ignorance of the true value of the patents, the plaintiff signed the proposed contract.   Shortly afterward the plaintiff, still relying upon the advice and representations of Little, signed a contract, stating the terms of the agreement more formally.   Thereafter the company, at the request of Little, offered the plaintiff a check for $50,000 in accordance with the terms of the contract made by him, and the plaintiff accepted the check and signed a release dated March 18, 1924, still relying upon the assurances of Little hereinbefore set forth and upon his trust and confidence in his sincerity and disinterestedness.

On the date when the release was signed or shortly thereafter, the patents were sold and conveyed by A. E. Little Company to a new company, for $1,000,000 in cash and more than fifty per cent of the stock in the new company, with an option in the United Shoe Machinery Company to buy the stock issued to the defendant company for $2,000,000.   The plaintiff discovered the facts in regard to this sale in November, 1924, and thereupon notified A. E. Little Company that he rescinded all contracts following the two originally made. By the bill he seeks to recover ten per cent of the selling price which the defendant company has received or is to receive from the sale of the patents less the sum of $55,000 previously paid him.

The defendant company in its answer demurred to the paragraph of the bill charging a breach of duty to the plaintiff, and assigned as reasons that no legal or equitable ground for relief entitling the plaintiff to rescind or avoid his agreements is stated; that the representations were of opinion or belief as to value or future events upon which the plaintiff had no

right to rely knowing that Little, as president of the company, had a fiduciary duty to act for it and was therefore not disinterested; and that the failure to disclose the negotiations was not a fraud on the plaintiff, since it does not appear that Little owed him a duty to disclose such facts. We treat this part of the answer as if it had been presented by formal demurrer.

A principal is liable for the torts of his agent committed within the scope of his employment. *Haskell* v. *Starbird,* 152 Mass. 117. *Weeks* v. *Currier,* 172 Mass. 53. By accepting the benefits of a fraudulent transaction the principal adopts his agent's fraud and becomes liable even though the fraud had not been authorized. *Isenbeck* v. *Burroughs,* 217 Mass. 537, 540. *Lazenby* v. *Henderson,* 241 Mass. 177, 181. *Bennett* v. *Judson,* 21 N. Y. 238, 239. Directors are trustees for the stockholders and are bound to act solely for the benefit of the corporation, and should have no personal interest adverse to that of the corporation. *Alvord* v. *Cook,* 174 Mass. 120, 126. *Maxwell* v. *Massachusetts Title Ins. Co.* 206 Mass. 197, 202. *Allen-Foster-Willett Co. petitioner,* 227 Mass. 551, 556. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 246. But this rule has no application to the case where the director pretends to act in the interest of a third party to gain some unfair advantage for the corporation, and it cannot defend against fraudulent acts committed in its behalf by contending that the director had a fiduciary duty to the corporation. Upon the allegations in the bill, Little was acting solely in the financial interest of the corporation though pretending to be the friendly adviser of the plaintiff. The rule that a party cannot serve two masters has no application to such a situation. The demurrer does not raise the question which would be presented in a case where the corporation is protecting itself from acts of an agent who has really been representing himself, or a third party, in a matter where his sole duty was to the corporation. The demurrer admits that while the company's agent was fraudulently pretending to act in the interest of the plaintiff, he was really acting for the company.

The duty of honest advice and full disclosure arises where

one party reposes confidence in the integrity of another and the other party in advising voluntarily assumes and accepts the confidence. The circumstances disclosed by the bill were such as to indicate a just foundation for a belief that, in giving advice or presenting arguments, the defendant company, speaking through Little, was acting in the interest of the plaintiff. *Comstock* v. *Livingston,* 210 Mass. 581, 584. In the case last cited the confidential relationship was not established. There was no promise to advise as a friend and in the plaintiff's interest, and the defendant did not know that reliance was being placed upon him. See *Ricketts* v. *Tompkins,* 3 Buch. 552. In *Fisher* v. *Budlong,* 10 R. I. 525, the fact that the defendant professed to aid the plaintiff in selling his stock and getting a good price for it was held to be material in proving that he had assumed the obligations of a trusted adviser.

In the case at bar the parties did not deal at arm's length. The defendant company's agent undertook to be the plaintiff's adviser in the plaintiff's interest in a matter where the agent had information material to the transaction but unknown to the plaintiff. When confidence is reposed and accepted, the person trusted is liable for expressing dishonest opinions upon which the other party relies and acts to his damage, and he is also liable for concealing facts which by reason of the relationship he should disclose. See *Commonwealth* v. *Stuart,* 207 Mass. 563, 569; *Dzuris* v. *Pierce,* 216 Mass. 132; *Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126. "The broad principle on which the court acts in cases of this description is that, wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed, to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him." *Tate* v. *Williamson,* L. R. 1 Eq. 528, 536. *Hill* v. *Hall,* 191 Mass. 253, 263. The fact that Little held a fiduciary relation to the defendant company

did not as matter of law prevent the plaintiff from placing reliance upon him as a friendly adviser in the plaintiff's own interest. Upon the allegations in the bill the corporation, acting through its president, took an unfair advantage of the plaintiff's trust in him, and the plaintiff is entitled to equitable relief. Upon the facts stated, tender of the return of the money received by the plaintiff was not required. *Ross* v. *Burrage*, 233 Mass. 439.

The order overruling the demurrer is affirmed with costs of this appeal.

*Ordered accordingly.*