ELEANOR E. AKIN *vs.* MILTON B. WARNER, administrator
(and a companion case between the same parties).

Berkshire.     September 18, 1945. — November 6, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Fiduciary. Trust,* Express trust: what constitutes; Accounting by
trustee; Trustee's duty of fidelity. *Release. Limitations, Statute of.
Laches. Equity Jurisdiction,* Laches.

Subsidiary facts found by a master required conclusions that two women
did not deal at arm's length with a physician, their friend of long
standing, to whom, at his suggestion, "to make money in the stock
market," they entrusted funds and securities for investment over a
period of years, but that the relationship between him and them was
one of trust and confidence and fiduciary and not one of mere debtor
and creditor.

A woman was not precluded from maintaining a suit in equity for an
accounting against the administrator of the estate of a fiduciary, to
whom she had entrusted funds and securities for his management in
investment and reinvestment, by the mere facts that some of his opera-
tions, to her knowledge, were speculative, and that he had not exerted
undue influence or adopted any improper methods to dissuade her from
taking advice from others.

It is the duty of a trustee to keep clear and accurate accounts with re-
spect to the administration of the trust, and if, due to his failure to
do so, the administrator of his estate is unable to sustain the burden
resting on him to render a proper account and to account for a defi-
ciency in the trust funds, a decree charging the estate with such
deficiency is required.

The mere facts that a woman, beneficiary of a trust, while she was on
friendly relations with the trustee and without his exerting undue in-
fluence or having an intent to deceive, received certain property from
him and signed what he represented to be a "final statement" of his
trust, which recited that he would turn back to her "all . . . prop-
erty . . . held in custody for" her, contained a list of the property
so delivered to her, and closed with the words, "This squares the
account," and which he both signed and swore to, did not preclude her
from maintaining against the administrator of his estate a suit for an
accounting as to a deficiency beyond the property turned over to her
and from recovering an amount found due in such accounting, where
she so signed in reliance on his untrue statements that he was then
accounting to her for all of her assets in his hands and that what he
delivered to her "squared the account."

The statute of limitations was not a bar to a suit in equity for an accounting brought by a cestui que trust against the administrator of the estate of the trustee, begun within a year after the appointment of the administrator and about sixteen months after the trustee had purported to make a final accounting of the trust to the cestui.

A delay by a beneficiary of a trust for sixteen months after a purported final accounting, not then known by the beneficiary to have been incomplete, properly might be found not to constitute laches barring a suit for an accounting brought against the administrator of the estate of the trustee less than a year after the appointment of the administrator.

Two BILLS IN EQUITY, filed in the Superior Court with writs of summons and attachment dated August 11, 1942.

The cases were heard upon a master's report by *Burns,* J.

*W. J. Donovan,* (*W. A. O'Hearn* with him,) for the plaintiff.

*M. B. Warner,* for the defendant.

SPALDING, J. These are two bills in equity, in each of which the plaintiff seeks an accounting from the defendant in his capacity as administrator of the estate of William L. Tracy, hereinafter referred to as Dr. Tracy. In one of the bills, an accounting is sought with respect to moneys and securities which the plaintiff alleges she entrusted to Dr. Tracy for safekeeping and investment. In the other, the plaintiff seeks an accounting for funds similarly entrusted to Dr. Tracy by her mother, now deceased, whose interest the plaintiff now owns by virtue of an assignment. The cases were referred to a master whose report was confirmed by interlocutory decrees. From a final decree dismissing the bill in each case, the plaintiff appeals.[1]

The pertinent facts found by the master are these: Dr. Tracy was a successful physician and surgeon who resided in Pittsfield where he had practised his profession since 1910. The plaintiff, who resided in Johnsonville, New York, met Dr. Tracy in 1921 when he became acquainted with her father and mother. Thereafter he visited at the Akin home and became a close friend of the plaintiff's father and mother. This friendship continued down to the times of their deaths

---

[1] By order of the Superior Court, the cases were consolidated for presentation to this court. They are numbered in the Superior Court 11354 and 11355, respectively.

in 1925 and 1927 respectively. The plaintiff's feeling toward Dr. Tracy was "that toward a beloved and deeply respected uncle of whom she stood somewhat in awe" — a feeling that continued until his death in 1941. The plaintiff, who was unmarried and in her early thirties at the time when she became acquainted with Dr. Tracy, had "had no particular experience in, or knowledge of, business finance or the stock market, but knew as much about them as the average well educated American woman. She was a woman not lacking in common sense, and in matters of ordinary every day living, she had plenty of will power."

In 1922 Dr. Tracy began to suggest to the plaintiff and her mother the possibility of helping them to "make money in the stock market." (He had had extensive dealings in the stock market and in one year his purchases and sales with one brokerage concern amounted to over $4,000,000.) Mrs. Akin and the plaintiff in 1923 and 1924 respectively began to turn over money and securities to Dr. Tracy for purposes of investment. In the case of Mrs. Akin this continued until her death in April, 1927. The plaintiff's advances of funds to Dr. Tracy continued until 1932. Thereafter he continued to handle and manage her account, buying and selling securities and making remittances of principal, dividends and income until April 21, 1941. After the death of Mrs. Akin, Dr. Tracy treated funds of hers still remaining in his hands as belonging to the plaintiff, who was her sole legatee, and mingled them with the plaintiff's securities or the proceeds thereof.

At various times while Dr. Tracy was handling the funds of the plaintiff and her mother, he reassured them that they had no cause "to worry," that he would "be careful," that he was investing in safe securities, and that their principal would be safe. There are other findings from which it can be inferred that some of the investments made by Dr. Tracy were for speculative purposes and that the plaintiff and her mother knew of this. But notwithstanding this, the findings establish that for the most part the funds were entrusted to him for purposes of investment and that he so understood. From time to time Dr. Tracy advised both

Mrs. Akin and the plaintiff not to talk much about their financial affairs to others, but he did not exert undue influence or any other improper method to dissuade them from taking advice from others with respect to their business or financial transactions. Although the plaintiff after her mother's death was kept advised by Dr. Tracy as to the course of his dealings, she "at all times relied on . . . [his] judgment in dealing with her advances and the securities purchased thereby, and never objected to or criticized his dealings." The plaintiff after her mother's death had no near relatives nor did she have any business counsellors outside of Dr. Tracy. An accounting was had between Dr. Tracy and Mrs. Akin and the plaintiff in 1925. Thereafter no accounting was ever given to Mrs. Akin during her lifetime and none was ever given to the plaintiff until that of April 21, 1941, hereinafter referred to. Dr. Tracy kept no written statements which showed with any degree of accuracy what funds were received from the plaintiff or her mother and what he did with them. It does not appear that he had any bank account standing in his name as trustee, and the moneys advanced by the plaintiff and her mother were for the most part mingled with his own in his personal bank account.

In the spring of 1941, due to ill health, Dr. Tracy became despondent. On April 21, 1941, at Dr. Tracy's request the plaintiff visited him at his office at Pittsfield. During this visit he produced what he called a "final statement" which he had prepared for her; he informed her that he would like to have her sign it and that he was turning over to her the securities and check mentioned in the instrument. No other person was present. The plaintiff signed two copies of the statement, substantially in duplicate, which had been previously signed by Dr. Tracy before a notary two days earlier, on April 19. Each retained a copy. Material portions of these statements, which were not under seal, are as follows: "This is to certify, that the Investment account, of Miss Eleanor E. Akin . . . which account Dr. Wm. L. Tracy has been directing . . . has been at this date closed; and Dr. Tracy, will turn back to Miss Akin on

April 21st/41, all the securities, interest, funds and cash balances and all other property which Dr. Tracy has held in custody for Miss Akin." After listing the securities and a check to be turned over, the statements conclude with the words "This squares the account." · The securities and check mentioned in the statements were then turned over to the plaintiff.

The plaintiff remained on friendly terms with Dr. Tracy until his death by suicide on August 2, 1941. In the interval between April 21 and the time of his death, the plaintiff saw Dr. Tracy but once and then only for a short time on the street. In June she made an attempt to see him at his office but he told her that he was too busy to see her.

The master, after reciting in detail the various financial transactions which took place between Dr. Tracy and Mrs. Akin, concluded that as of the date of the latter's death Dr. Tracy had accounted for all but $1,260.92. He found that the defendant owes the plaintiff this sum with interest at six per cent from the date of Mrs. Akin's death (April 27, 1927) to the date of the filing of the report (June 5, 1944), or $2,548.74. With respect to money and securities advanced to Dr. Tracy by the plaintiff between 1924 and 1932, the master concluded that (unless the document dated April 21, 1941, constituted a release or an "account and satisfaction") Dr. Tracy had failed to account for $17,879.02 and that the defendant owes that sum to the plaintiff with interest at six per cent from April 21, 1941, to the date of the report, or $21,231.34.

The only objection taken by the defendant to the master's report, which became an exception (*Smith* v. *Smith*, 313 Mass. 687, 689), is to the ultimate finding in each case that the defendant is indebted to the plaintiff. There is nothing in the master's findings that would cause us to doubt the correctness of his computation of the amount due the plaintiff in either case. The defendant does not challenge the computation, as such, but asserts that as matter of law on the facts found nothing was owed to the plaintiff in either case.

The principal question for determination in each case is whether or not there was a fiduciary relationship between the parties. The master made no express finding on this question, as he might well have done (see *Seemann* v. *Eneix*, 272 Mass. 189, 191; *Ryder* v. *Donovan*, 282 Mass. 551, 554) inasmuch as it was a mixed question of law and fact, but we are of the opinion that the subsidiary facts contained in the report establish that the plaintiff and her mother did not deal with Dr. Tracy at arm's length and that the relationship between them was one of trust and confidence. This conclusion is supported by numerous decisions of this court, *Hawkes* v. *Lackey*, 207 Mass. 424, 431–433; *Jameson* v. *Hayes*, 250 Mass. 302, 307, 308; *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449; *Birch* v. *Arnold & Sears, Inc.* 288 Mass. 125, 136; *Stuck* v. *Schumm*, 290 Mass. 159, 161, and is not at variance with anything decided in *Plumer* v. *Luce*, 310 Mass. 789, on which the defendant strongly relies. In that case, on facts very different from those here, the relationship between the parties was held to be that of debtor and creditor. It is true, as the defendant argues, that some of Dr. Tracy's investments on behalf of the plaintiff and her mother were of a speculative nature, as they well knew, but this does not deprive the relationship of its fiduciary character. The sums found by the master to be owed the plaintiff do not include any losses due to improper or speculative investments. While the master found that the evidence failed to show what Dr. Tracy did with the funds not accounted for or that he converted them to his own use, this does not vitiate his conclusion that the defendant is liable to the plaintiff for such sums.

Where, as here, a trust is established, the burden of proof is on the trustee to account for money or property held by him in trust. *Little* v. *Phipps*, 208 Mass. 331, 335. *Attorney General* v. *Bedard*, 218 Mass. 378, 385–386. *Chopelas* v. *Chopelas*, 303 Mass. 33, 35. It was the duty of Dr. Tracy as a trustee to keep clear and accurate accounts with respect to the administration of the trusts. *Campbell* v. *Cook*, 193 Mass. 251, 256. Am. Law Inst. Restatement: Trusts, § 172. Scott on Trusts, § 172. See *Chopelas* v. *Chopelas*,

294 Mass. 327, 334, 335. If, due to his failure to comply
with this duty, the defendant as the administrator of his
estate is unable to render a proper account, the consequences
of such failure must fall on the estate. *Attorney General* v.
*Bedard*, 218 Mass. 378, 386. Am. Law Inst. Restatement:
Trusts, § 172, comment b. Scott on Trusts, § 172.

The instrument signed by the plaintiff on April 21, 1941,
does not bar the plaintiff, even if, as we do not decide, it
amounted to a release. In view of the fiduciary relationship
that existed between the parties, Dr. Tracy was required to
exercise the utmost good faith and to make the fullest dis-
closures to the plaintiff in his dealings with her (*Reed* v.
*A. E. Little Co.* 256 Mass. 442, 449; *Gardiner* v. *Rogers*, 267
Mass. 274, 278), and any transaction between them, while
not void, will be subjected to the closest scrutiny. *Part-
ridge* v. *Clary*, 228 Mass. 290, 293. If in any transaction
with the cestui a trustee abuses the confidence placed in
him, either by concealment of facts or otherwise, the trustee
will not be permitted to retain the advantage accruing to
him as a result of the transaction, although the transac-
tion could not have been impeached if no such confidential
relation existed. *Hawkes* v. *Lackey*, 207 Mass. 424, 432–
433. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448–449. Here
the so called "final statement" was signed by the plaintiff
in reliance upon the representations made therein, and
orally, by Dr. Tracy that he was accounting to her for all
of her assets in his hands and that the check and securities
which he was turning over to her "squared" the account.
But on the findings of the master this did not "square"
the account; a substantial sum of money was still unac-
counted for. Even if, as the master found, no undue influ-
ence was exerted on the plaintiff and no intent to deceive
her was shown, still the fact remains that the representa-
tions which induced her to sign the statement were not
true. A release is not effective to discharge a trustee's
liability for breach of trust unless the beneficiary had knowl-
edge of all relevant facts that the trustee knew or should
have known. *Flynn* v. *Colbert*, 251 Mass. 489, 493. See
*Lanman* v. *Lanman*, 206 Mass. 488, 491; *Hodge* v. *Mackin-*

*tosh*, 248 Mass. 181, 185, 186; Am. Law Inst. Restatement: Trusts, § 217; Scott on Trusts, § 217.

The statute of limitations, pleaded by the defendant, is not a bar to the maintenance of these suits. "The statute of limitations does not begin to run, in favor of a trustee against his cestui que trust, till the trustee has repudiated the trust, and knowledge of the repudiation has come home to the cestui que trust." *Davis* v. *Coburn*, 128 Mass. 377, 380. *Stuck* v. *Schumm*, 290 Mass. 159, 163–166. No act of Dr. Tracy prior to April 21, 1941, can be said to amount to a repudiation of the trust.

The master found that the plaintiff was not guilty of laches. We think that this conclusion was warranted, if not required, on the facts found. [1] *Norton* v. *Chioda*, 317 Mass. 446, 452. Delay which might otherwise be found to be unreasonable does not constitute laches so long as there has been no repudiation of the trust with knowledge of the beneficiary. *Allen* v. *Stewart*, 214 Mass. 109, 113. *Chandler* v. *Lally*, 308 Mass. 41, 44–45. Am. Law Inst. Restatement: Trusts, § 219.

It follows that the final decrees dismissing the bills must be reversed. In case No. 11354 a decree is to be entered ordering the defendant to pay to the plaintiff the sum of $21,231.34 with interest from June 5, 1944, the date when the master's report was filed. See G. L. (Ter. Ed.) c. 235, § 8; *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 509, 510. In case No. 11355 a decree is to be entered ordering the defendant to pay to the plaintiff the sum of $2,548.74 with interest from June 5, 1944. The plaintiff is to have costs in both cases.

*So ordered.*

---

[1] Dr. Tracy died on August 2, 1941, and the defendant was appointed administrator of his estate on September 2, 1941. The present suits were commenced by writs dated August 11, 1942, and the bills were filed in court on October 5, 1942.