COLECCHIA FAMILY IRREVOCABLE TRUST, IN THE MATTER OF, 100 Mass. App. Ct. 504

 
 IN THE MATTER OF THE COLECCHIA FAMILY IRREVOCABLE TRUST.

100 Mass. App. Ct. 504
 February 9, 2021 - November 29, 2021

Court Below: Probate and Family Court, Essex Division
Present: Wolohojian, Desmond, & Grant, JJ.

 

Trust, Interest of beneficiary, Trustee's discretion, Exemption of trustee from liability, Attorney's fees, Assets of trust. Uniform Trust Code. Practice, Civil, Amendment of complaint, Service, Attorney's fees. Probate Court, Notice. Fiduciary. Damages, Quantum meruit. Undue Influence.

In the circumstances of a civil action that was commenced by attaching a complaint in equity to a general trust petition, and in which a motion to amend that attachment with an amended complaint seeking monetary relief was later filed, this court exercised its discretion to overlook the pleading defect in the interest of judicial economy and took into account the allegations and claims contained in the complaint attached to the general trust petition and in the amended complaint. [507-509]

In the circumstances of a civil action that was commenced by attaching a complaint in equity to a general trust petition and for which notice of the citation for the petition was given only by publication, and for which no new citation issued following the later filing of a motion to amend the attached complaint with an amended complaint seeking monetary relief, this court observed that the instructions regarding service as they appeared on the Probate and Family Court's order of notice on the reverse side of the citation were not clear, in that the use of the phrase "and/or" created ambiguity concerning the three specified methods of service (i.e., service in hand or by certified mail if the interested parties' whereabouts were known and, if their whereabouts were unknown, by delivery or mail to their last known address, and by publication) such that notice by way of publication alone was a reasonable construction of the order of notice; accordingly, this court concluded that the petitioner could not be faulted for following that route, and that, in any event, it was not necessary to decide whether a new citation was required in these unusual circumstances given that the surviving counts all were asserted in the original complaint. [512-516]

In a civil action alleging, inter alia, that the respondent trustees committed a breach of the duty of loyalty to the petitioner beneficiary, the judge properly dismissed the claim, where, under the terms of the trust, the donors (the parents of the beneficiary who retained a life estate in the property) rather than the trustees bore the cost of maintaining and repairing the property during their lifetimes, and thus the allegations did not support the beneficiary's theory that the trustees received a benefit from the maintenance and repairs 

 Page 505 

the beneficiary made to the property during his parents' lifetimes [516-517]; further, the judge properly dismissed the petitioner's quantum meruit claim seeking to recover from the trustees the value of his work on the property under a theory of unjust enrichment, where, under the terms of the trust, repairs and maintenance of the property fell to the donor parents rather than the trustees. [517]

In a civil action, the judge erred in dismissing the petitioner beneficiary's claim alleging that the respondent trustees committed a breach of the duty of care in their handling of the proceeds from the sale of property held by the trust by allowing the trust's attorney to retain the proceeds long after he should have released them, where, based on the trustees' acknowledgement that the lawyer retained the funds too long, combined with the lack of information as to what efforts the trustees made to get the funds released, it was a question of fact whether the trustees acted with sufficient diligence in the circumstances [517-519]; however, the judge properly dismissed the petitioner's claim alleging that the trustees committed a breach of their duty of care when they failed to invest the sale proceeds in a suitable interest-bearing account and thus did not comply with the prudent investor rule, where, in light of this court's construction of a section of the trust as shielding the trustees from personal liability for not following the prudent investor rule, but only to the extent permitted by G. L. c. 203E, § 1008 (i.e., to the extent that the trustees acted in good faith or without reckless indifference to the purpose of the trust or the interests of the beneficiaries), the petitioner did not allege either bad faith or reckless indifference with respect to the approximately three months during which the funds were invested by the trustees before distribution to the beneficiaries [519-520].

In a civil action, the judge properly dismissed a claim alleging that the respondent trustees violated G. L. c. 203E, § 813 (b), by failing since the inception of the trust to inform the petitioner beneficiary of the trust's existence, where the petitioner could not have become a qualified beneficiary until both of his parents had died, and his damages (i.e., that he would not have provided repairs, maintenance, and improvements to the property without compensation had he known of the trust) were alleged to have occurred during his parents' lifetimes. [520-522]

In a civil action alleging, inter alia, that the respondent trustees did not provide an accounting until nearly two years after the petitioner had become a qualified beneficiary following the death of his surviving parent, and that the failure to account resulted in unspecified damages, the judge properly dismissed so much of the petitioner's theory of damages as rested on his having provided repairs and maintenance to the property before his parents' deaths, given that the value of that work was provided to his parents rather than the trust; further, the judge properly dismissed so much of the petitioner's theory of damages as rested on the allegation that the trustees took various items of personal property from the home after the surviving parent's death, given that those items were not alleged to have been held by the trust, as opposed to being part of the parent's estate; however, the judge erred in dismissing so much of the petitioner's claim of damages from the trustees' failure to deal properly with the proceeds from the sale of the property. [522-523]

In a civil action alleging, inter alia, that the respondent trustees improperly distributed trust assets by taking the donor parent's personal items for themselves

 Page 506 

 after her death, dismissal of the claim was proper, where the petitioner beneficiary had no claim against the trustees in their capacity as such, in that nothing suggested that the items were ever assets of the trust, although the allegations might serve as the basis for a viable claim in another type of suit. [523-524]

In a civil action alleging, inter alia, undue influence in the creation of a trust, the judge erred in dismissing the petitioner beneficiary's claim, where, although the constellation of allegations may not have made out the strongest claim of undue influence, it was sufficient to get over the low bar required to withstand a motion to dismiss. [524-525]

PETITION filed in the Essex Division of the Probate and Family Court Department on May 23, 2018.

 Motions for judgment on the pleadings were heard by Jennifer M.R. Ulwick, J., and a motion to amend the judgment and a request for attorney's fees also were heard by her.

 Brian K. Wells for Michael Colecchia.

 Gino N. Ricciardelli for Denise Colecchia & another.

 WOLOHOJIAN, J. These consolidated appeals from the dismissal of a general trust petition (and subsequent award of attorney's fees and costs) raise three novel procedural and substantive issues. First is whether the language of the order of notice preprinted on the Probate and Family Court's "trust citation" form (MPC 584) permits notice by publication alone. We conclude, in essence, that the form's use of the term "and/or" can reasonably be read to mean that notice of the citation may be made by publication alone, which the petitioner here made. We also conclude that neither G. L. c. 190B, § 1-401, nor Rule 6 of the Supplemental Rules of the Probate Court (2012) (supplemental rule 6) requires a different reading of the form order of notice. Second is what is the point in time at which a person becomes a "qualified beneficiary" for purposes of a trustee's duty to inform under G. L. c. 203E, § 813. We conclude that, in order to determine whether a person is a "qualified beneficiary" for purposes of a trustee's duty to inform under § 813, the phrase "the date the beneficiary's qualification is determined" found in G. L. c. 203E, § 103, means the date, under the terms of the trust instrument, on which an event occurs to trigger a beneficiary's entitlement under the trust. Third is whether the requirements of the Massachusetts Uniform Probate Code, including the affidavit requirement contained in G. L. c. 190B, § 1-401 (e), apply in a general trust petition action such as this one. We conclude that they do not.

 The three matters of first impression we have just identified arise in the context of the overarching question whether the

 Page 507 

 petitioner's substantive claims were properly dismissed. Those claims were disposed of in two tranches. First, the judge allowed the trustees' motion for partial judgment on the pleadings and entered judgment on count I (breach of the duty of loyalty), count IV (improper distribution of assets), count V (quantum meruit), and count VI (undue influence), and entered partial judgment on count III (breach of the duty to inform and account). Second, the judge allowed the trustees' motion for judgment on the pleadings on the remaining counts, which were count II (breach of the duty of care), and the remainder of count III, as well as the trustees' motion to dismiss all counts for failure to comply with Rule 3 of the Supplemental Rules of the Probate Court (2012) (supplemental rule 3) and supplemental rule 6. We conclude that no claims should have been dismissed for failure to comply with the service requirements of supplemental rules 3 and 6. We also conclude that the claims for breach of the duty of loyalty, quantum meruit, breach of the duty to inform, and improper distribution of assets were each properly dismissed for failure, in essence, to state a viable claim. We conclude, however, that the petition adequately stated claims for breach of the duty to account (in part), breach of the duty of care (in part), and undue influence, and that those claims should not have been dismissed. Finally, in light of these conclusions, we vacate the award of attorney's fees and costs in favor of the trustees (whom we also sometimes call the respondents) without prejudice to renewal on remand. [Note 1]

 A procedural preamble. Michael Colecchia (Michael) [Note 2] began the underlying action by filing a general trust petition to which he attached a document that was, in form and substance, a complaint

 Page 508 

 in equity that sought to "recover[] compensation for services performed under mistaken pretenses" or, in the alternative, to invalidate the Colecchia Family Irrevocable Trust (trust) "because it was created under undue influence." This hybrid pleading, a sort of litigation minotaur, is at the center of a procedural labyrinth through which we make our way.

 Under G. L. c. 203E, § 201, which is part of the Massachusetts Uniform Trust Code, although "[a] trust shall not be subject to continuing judicial supervision unless ordered by the court," "[t]he court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." G. L. c. 203E, § 201 (a) & (b). An interested person may initiate such an action by filing a general trust petition using Probate and Family Court form MPC 201. A general trust petition may "relate to any matter involving [a] trust's administration, including a request for instructions and an action to declare rights." [Note 3] G. L. c. 203E, § 201 (c). Thus, although a general trust petition may be used to invoke the court's jurisdiction over any matter of trust administration, it cannot be used as an omnibus vehicle for every type of relief a beneficiary may seek against a trust's trustees. For example, it is not a proper mechanism by which to bring claims for monetary damages, such as (by way of example only) breach of fiduciary duty, undue enrichment, or breach of loyalty. Yet that is what Michael attempted to do here by attaching a complaint in equity to his general trust petition, and then later filing a motion to amend that attachment with a "First Amended Complaint" (FAC) also seeking monetary relief. [Note 4]

 We do not endorse this approach, and the judge would not have erred had she dismissed without prejudice Michael's claims that did not relate to the trust's administration. We thus caution future litigants against proceeding as Michael did here. Nonetheless, we

 Page 509 

 exercise our discretion to overlook the pleading defect in the interest of judicial economy and, like the judge, take into account the allegations and claims contained in the complaint attached to the general trust petition and in the FAC. [Note 5]

 Background. We summarize the facts alleged in the complaint and the FAC in the light most favorable to Michael, reserving others to our later discussion of particular issues. Michael is one of six siblings whose parents were Mario and Lillian Colecchia. Mario and Lillian bought a house in Revere in 1955 (property), where they raised their six children (Mario Jr., Michael, Mark, Denise, Donna, and Diane). [Note 6] On February 3, 2005, Mario and Lillian created an irrevocable trust into which they transferred the property by quitclaim deed. [Note 7] Under the terms of the trust,

"[t]he donors reserve the right to the use and occupancy of the real estate during their lifetimes, with the donors to pay for all maintenance and repairs, water and sewer charges, insurance charges, and taxes relating to said premises, if they shall so elect. At any time, the donors' right of use of the premises shall not include the right to collect rent therefrom. In addition, for further clarification, during the lifetimes of the donors, they shall have the right to possession or enjoyment of any real estate, which constitutes the principal residence. Nothing herein shall be construed to limit the ability of the Trustees to alienate, sell or convey the real estate or any interest therein, or to lease, mortgage or demise any or all the premises, so long as the provisions stated above are met."

According to the terms of the trust, Mario and Lillian's children would receive nothing during Mario and Lillian's lifetimes. However, after Mario and Lillian both died, Michael and his brothers were each to receive ten percent of the trust res. The remaining seventy percent was to be divided equally among the three daughters. Donna and Denise were named trustees.

 Michael did not know that his parents had transferred the 

 Page 510 

property into the trust. Nor did he know that his parents intended to distribute the trust assets unequally among their children. Believing that all six children would inherit equally, and that his parents (rather than the trust) owned the property, from February 3, 2005 (the date on which Mario and Lillian created the trust and transferred the property to it) to February 2016 (when Lillian died), [Note 8] Michael maintained the property by landscaping the yard, removing snow from the sidewalks and driveway, renovating a bathroom, and performing general maintenance. Michael performed this work without compensation because he believed his parents continued to own the house and that all six children would inherit equally. Had he known otherwise, he would not have performed the work without compensation. After both parents died, Michael learned of the existence of the trust and of its terms.

 Over Michael's objection, Donna and Denise, as trustees, sold the property to a third party for $366,000 on January 1, 2017. [Note 9] The sale proceeds were held in the Interest on Lawyers' Trust (IOLTA) account of the attorney who represented the trust in the transaction. Michael does not quarrel with the fact that the proceeds were initially deposited into the attorney's IOLTA account. However, he does quarrel with the fact that they were held by the attorney for approximately nine months, which he avers was both without right and unreasonably delayed distribution to the beneficiaries. Michael also contends that Donna and Denise failed to take reasonable steps to get the funds released from the IOLTA account, and in addition, that once the funds were released, Donna and Denise failed to place them in an appropriate interest-bearing account and delayed distribution to the beneficiaries.

 Michael filed a general trust petition on May 23, 2018, attaching a complaint and a copy of the trust. Count I of the complaint asserted that Denise and Donna breached their duty of loyalty by (1) not informing him that the trust existed, (2) not informing him that Mario and Lillian no longer owned all interest in the property, (3) not dealing with Michael on fair contractual terms, and (4) accepting, and benefiting from, Michael's work on the property without disclosing the existence of the trust or the fact that they would receive a greater share upon their parents' death. In

 Page 511 

 count II, Michael alleged that the trustees breached their duty of care by failing to put the proceeds from the sale of the property into an interest-bearing account and in failing to disburse the funds in a reasonable time. Count III alleged that the trustees had breached their duty to inform the beneficiaries of the trust and account for assets held by the trust. Count IV alleged that Denise and Donna took personal items from the property after Lillian died, and failed to make an inventory of those items or to disburse them properly. Count V asserted a claim of quantum meruit for the value of the work Michael performed on the property without compensation. Finally, count VI asserted that Donna exerted undue influence on Mario and Lillian, resulting in the unequal division of the property among their children.

 Denise and Donna filed affidavits of objection. They also filed a motion for partial judgment on the pleadings with respect to counts I, III, IV, V, and VI of the complaint. [Note 10] On the date of the hearing on the motion, Michael filed the FAC, which restated the same six causes of action, but amplified some of the factual allegations and theories of the original complaint. Although certainly not obligated to do so when ruling on the motion to dismiss, the judge took the allegations of the FAC into account. The judge issued a detailed written explanation of her decision to dismiss count I, count III (partially), and counts IV, V, and VI. Specifically, as to count I (breach of duty of loyalty), the judge ruled that under the terms of the trust and under common law, it was Mario and Lillian who were responsible as life tenants for the maintenance and repairs to the property during their lifetimes, and that the trustees received no personal gain or benefit from the work performed because the trust did not hold use and occupancy rights to the property. As to count III (duty to inform and account), the judge agreed that the trustees had a duty to inform the beneficiaries of the trust as of Lillian's death on February 27, 2016. The claim was allowed to proceed to the extent it rested on the trustees' failure to inform after Lillian's death; it was otherwise dismissed. Count IV was dismissed because the complaint did not allege that the personal property allegedly taken by Donna and Denise was property of the trust. Count V (quantum meruit) was dismissed because the judge concluded that it was Mario and Lillian, as holders of the life estate, who benefited from Michael's 

 Page 512 

work, not the trust or the trustees. Count VI (undue influence) was dismissed for failure to file an affidavit stating the specific facts and bases for the claim, and because the allegations of the FAC failed to state facts with any specificity.

 Donna and Denise then filed a motion for judgment on the pleadings on the remainder of the complaint (count II and the remainder of count III), and a motion to dismiss all of the claims for failure to comply with supplemental rules 3 and 6. Michael has failed to include in the record appendix a copy of the full memoranda in support of those motions. Accordingly, we do not know precisely the bases for the motions, except that, among other things, Donna and Denise argued that service had not been made in accordance with supplemental rules 3 and 6. After hearing, the judge allowed the motions on alternate grounds. First, she dismissed all counts for failure to prosecute, specifically failure to comply with supplemental rules 3 and 6. Second, she dismissed count II [Note 11] for the reasons stated in the memorandum in support of the motion which (as we have stated), we do not have the benefit of in the appellate record.

 A decree of dismissal entered on March 14, 2019. On March 20, 2019, Michael filed a notice of appeal. Subsequently, Donna and Denise filed two motions to amend the judgment. The first of these was filed on April 12, 2019, and resulted in an amended judgment; [Note 12] a judgment of dismissal entered on May 3, 2019. The second postjudgment motion was filed on May 10, 2019, and sought a further amendment of the judgment to award attorney's fees and costs. Although that motion had not yet been acted on, the appeal proceeded. Once we discovered that the appeal was premature, we took the steps described in note 1, supra, and a further amended judgment entered on July 26, 2021, awarding attorney's fees and costs to the respondents in the amount of $45,000. Before us now are Michael's appeals from the dismissal of his claims, and from the award of attorney's fees and costs in favor of the trustees.

 Discussion. 1. Service of citation. As noted above, this action was begun by the filing of a general trust petition on May 23, 2018. Six days later, the register of probate issued a citation giving notice of the petition and informing interested parties of a 

 Page 513 

date by which they must file a written appearance and objection. The citation was issued on a preprinted form (form MPC 584 [12/28/16]) of the probate court, and an "order of notice" was preprinted on its verso. Those printed instructions provided for notice as follows:

 Michael gave notice of the citation for the petition only by way of publication. Donna and Denise argue that more was required. First, relying on supplemental rule 6, [Note 13] they contend that all 

 Page 514 

interested parties (i.e., the trustees and beneficiaries) had to be served in hand or by certified mail if their whereabouts were known and, if their whereabouts were unknown, by delivery or mail to their last known address and additionally by publication. [Note 14] Second, pointing to supplemental rule 3, [Note 15] they argue that the first amended complaint required service of a new citation, which never occurred.

 We begin by observing that the instructions regarding service as they are printed on the Probate and Family Court's "order of notice" on the back side of the citation are not clear. Specifically -- absent further clarification which did not here occur -- the use of the phrase "and/or" creates ambiguity because a person could reasonably understand either (a) that any one of the three specified methods of service was acceptable in the alternative, or (b) that the first two methods were acceptable in the alternative, but that notice of publication was additionally required. Because notice by way of publication alone was a reasonable construction of the order of notice, neither Michael nor his counsel can be faulted for following that route.

 Supplemental rule 6 is not to the contrary. Although the rule requires that interested persons who are located within the Commonwealth be served either in hand or by mail, see note 13, supra, supplemental rule 6 (C), it permits alternate forms of service "where otherwise required by statute or ordered by the court." Here, as we have already explained, the order of notice issued by the court was written in such a way as to suggest that notice could be made by publication alone.

 Moreover, the preprinted form's reference to G. L. c. 190B, § 1-401, [Note 16] would have served only to confirm Michael's reading of the order of notice. Section 1-401 provides that, unless otherwise ordered by the court, notice of a citation is to be made either by certified, registered, or first class mail, or by delivery to the

 Page 515 

 interested person, or by publication. [Note 17] Thus, absent contrary court order (which the judge is, of course, empowered to make in any given case), the statute permits the various methods of service in the alternative, which is entirely consistent with one of the two reasonable readings of the preprinted order of notice.

 For these reasons, the judge should not have dismissed the general trust petition for Michael's failure to follow the service requirements of supplemental rule 6. The problem here was not with service, but with the lack of clarity in the order of notice. If the probate court continues to use the existing preprinted order of notice form, it is incumbent on the judge in each case to indicate whether notice by publication is additive or alternative to service by delivery or mail. This can be easily accomplished by striking out one part or the other of the phrase "and/or."

 This leaves for our consideration supplemental rule 3, which requires that "notice of any pleading asserting new or additional claims for relief not asserted in the original petition shall be given by service of a new citation." It is undisputed that no new citation was sought, issued, or served for the FAC. That said, although the FAC amplified the allegations and theories of the original petition,

 Page 516 

 it did not assert new or additional claims for relief. It also did not add new parties or causes of action. Moreover, the judge never allowed the motion to file the FAC (although she did take its allegations into account). We need not decide whether a new citation was required under supplemental rule 3 in these unusual circumstances because, even assuming that one were, Donna and Denise would still not benefit because the surviving counts (count VI, count II [partial], and count III [partial]) (see Conclusion, infra), were asserted in the original complaint, to which supplemental rule 3 has no application.

 We now turn to the substantive arguments concerning the various causes of action. In doing so, we keep in mind that the standards for both a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), are the same. See Welch v. Sudbury Youth Soccer Ass'n, 453 Mass. 352, 353-354 (2009). In both cases, we consider the well-pleaded factual allegations of the FAC to determine whether they "raise [the petitioner's] right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citation omitted). Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). See Marchese v. Boston Redev. Auth., 483 Mass. 149, 156 (2019). Our review is de novo.

 2. Breach of the duty of loyalty. In essence, Michael claims that the trustees breached their duty of loyalty to him by accepting the benefit of the work he did to maintain or improve the property without telling him that the property had been placed into the trust or that they (as beneficiaries) would receive a greater share of the trust res upon their parents' death. In this way, Michael contends that the trustees did not transact fairly with him. See Cleary v. Cleary, 427 Mass. 286, 291 (1998), quoting Witherington v. Nickerson, 256 Mass. 351, 356 (1926) ("The general rule is that one acting in a fiduciary capacity for another has the burden of proving that a transaction with himself was advantageous for the person for whom he was acting"); Restatement (Second) of Trusts § 170(2), at 364 (1959) ("The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts").

 However, as the judge concluded, under the terms of the trust, it was the donors (who retained a life estate in the property) -- not the trustees -- who bore the cost of maintaining and repairing

 Page 517 

 the property during their lifetimes. Specifically, the trust provided that "[t]he donors reserve the right to the use and occupancy of the real estate during their lifetimes, with the donors to pay for all maintenance and repairs, water and sewer charges, insurance charges, and taxes relating to said premises, if they shall so elect." Thus, the allegations of the FAC do not support Michael's theory that the trustees received a benefit from the maintenance and repairs he made to the property during his parents' lifetimes. See Spring v. Hollander, 261 Mass. 373, 376 (1927).

 3. Quantum meruit. Michael essentially recasts his duty of loyalty claim as one for quantum meruit as well. He alleges that the trustees unfairly benefited from the value of the maintenance and repairs he made to the property during Mario's and Lillian's lifetimes, knowing that he would not have performed the work without compensation if he had known that it would benefit the trust. We note that the FAC does not allege that work was done at the trustees' request. Nonetheless, Michael seeks to recover from the trustees the value of his work under a theory of unjust enrichment. "To achieve recovery upon the theory of quantum meruit, the claimant must prove (1) that [he] conferred a measurable benefit upon the defendants; (2) that the claimant reasonably expected compensation from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual or chargeable, of the claimant's reasonable expectation." Finard & Co., LLC v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011).

 The quantum meruit claim fails for the same reasons we have already explained: under the terms of the trust, repairs and maintenance of the property fell to Mario and Lillian, who retained a life estate in the property. Although it is conceivable that the value of Michael's services may have preserved or increased the value of the property, it does not follow that the trustees were unjustly enriched by the value of Michael's services, because it was the donors -- not the trustees -- who were obligated to bear the costs of repairs and maintenance at the time Michael provided those services.

 4. Breach of the duty of care. Michael argues that the trustees breached the duty of care in their handling of the proceeds from the sale of the property in two respects. [Note 18] First, he alleges that the 

 Page 518 

trustees allowed the trust's attorney to retain the proceeds from the sale in the attorney's IOLTA account long after he should have released them. Second, he claims that the trustees failed to invest the sale proceeds properly once they were released by the attorney, see the Prudent Investor Act, G. L. c. 203C, § 3, and did not disburse the funds promptly. We examine each of these in turn.

 The trustees agree with Michael that the attorney held on to the sale proceeds for longer than he was entitled to. They take the position that the lawyer was entitled to hold only $5,000 in escrow until the recording of a discharge on an old undischarged lien that had been discovered by the title examiner. The remainder of the sale proceeds, in the trustees' view, should have been released from the attorney's IOLTA account promptly after the January 1, 2017 sale. Instead, the attorney did not release the sale proceeds until September 20, 2017, after Donna contacted him and expressed her anger over his continuing to retain the funds. According to the trustees, it was the attorney's responsibility to obtain the discharge. He failed to do so, and ultimately Donna took on the responsibility of obtaining the discharge from the Federal Deposit Insurance Corporation, which she obtained by November 3, 2017, approximately eleven months after the sale of the property.

 The trustees claim that they acted diligently in seeking to get the funds released from the attorney's IOLTA account. But based on the trustees' acknowledgement that the lawyer retained the funds too long, combined with the fact that it does not appear what efforts the trustees made before September 2017 to get the funds released, it is a question of fact whether the trustees acted with sufficient diligence in the circumstances. See Exchange Trust Co. v. Doudera, 270 Mass. 227, 229 (1930) ("a trustee in the management of his trust is bound to use good faith and to 

 Page 519 

exercise the diligence, sound discretion, and wise judgment of a prudent man in dealing with his own affairs"). This theory of the claim for breach of the trustees' duty of care accordingly should not have been dismissed.

 Finally, Michael claims that the trustees breached their duty of care when they failed to invest the sale proceeds in a suitable interest-bearing account and thus did not comply with the prudent investor rule. "[A] trustee who invests and manages trust assets shall owe a duty to the beneficiaries of a trust to comply with the prudent investor rule" contained in G. L. c. 203C, § 3, unless the trustee's acts are shielded by an exculpatory provision within the trust instrument. G. L. c. 203C, § 2. An "exculpatory clause" is a "term of a trust relieving a trustee of liability for breach of trust." G. L. c. 203E, § 1008 (a). Such clauses are unenforceable "to the extent [they] . . . relieve[] the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries" or if "inserted as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor." Id. See Passero v. Fitzsimmons, 92 Mass. App. Ct. 76, 81 (2017).

 Here, the trustees argue that section 4.3(d) of the trust functions as an exculpatory clause shielding them from liability for failing to comply with the prudent investor rule. But section 4.3(d) does not contain explicit language limiting the trustees' liability. [Note 19] See Sylvia v. Johnson, 44 Mass. App. Ct. 483, 484 n.2 (1998) ("Ordinarily, an exculpatory clause releases a party from his wrongful acts"). Instead, that section is part of a list of general powers conferred on the trustees:

"4.3. General powers of trustee.

"In addition to all common law and statutory authority, my trustee, except as otherwise provided, shall have power without approval of any court and in any manner it considers advisable:

". . .

"(d) to invest income and principal without being subject to legal limitations on investments by fiduciaries[.]"

 Page 520 

This is not like the trust language in Steele v. Kelley, 46 Mass. App. Ct. 712 (1999), upon which the trustees rely, which explicitly provided that "[t]he trustee shall not be liable . . . for any act or omission in the exercise of this trust, so long as he acts in good faith . . . [and he] shall not be liable for anything except his own personal and willful misfeasance or fraud." Id. at 719.

 All that said, it is difficult to imagine the point of construing the trust to, on the one hand, give the trustees power to invest without regard to the prudent investor rule while, on the other hand, opening them up to personal liability if they act in good faith when not following the prudent investor rule. For this reason, we construe section 4.3(b) of the trust to shield the trustees from personal liability for not following the prudent investor rule, but only to the extent permitted by G. L. c. 203E, § 1008; namely, to the extent that the trustees acted in good faith, or without reckless indifference to the purpose of the trust or the interests of the beneficiaries. Because the FAC does not allege either bad faith or reckless indifference with respect to the approximately three months during which the funds were invested by the trustees before distribution to the beneficiaries, this theory of Michael's claim for breach of the duty of care was properly dismissed.

 5. Breach of duty to inform and account under G. L. c. 203E, § 813, and breach of common-law duty to account. Read liberally, count III of the FAC (breach of duty to inform and account) appears to rest both on G. L. c. 203E, § 813, and on the common law.

 i. Duty to inform. Michael argues that the trustees have violated G. L. c. 203E, § 813 (b), by failing since the inception of the trust to inform him of its existence. Section 813 (b) requires that "[w]ithin 30 days after acceptance of the trust or the trust becomes irrevocable, whichever is later, the trustees shall inform, in writing, the qualified beneficiaries of the trustee's name and address."

 General Laws c. 203E, § 813, was adopted as part of the Massachusetts Uniform Trust Code (MUTC), which became effective July 8, 2012 -- seven years after the creation of the trust at issue here. Although the MUTC applies, with limited exceptions, to trusts created before its enactment, see St. 2012, c. 140, § 66, [Note 20] it does not affect an action taken before its effective date. See Mackey v. Santander Bank, N.A., 98 Mass. App. Ct. 431, 434

 Page 521 

 n.9, 437 (2020). Moreover, even after its effective date, the trustees' duty to inform under § 813 extends only to "qualified beneficiaries." A "qualified beneficiary" is defined for purposes of the MUTC as:

"a beneficiary who, on the date the beneficiary's qualification is determined:

"(i) is a distributee or permissible distributee of trust income or principal; or

"(ii) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date."

G. L. c. 203E, § 103. See DeGiacomo v. Quincy, 476 Mass. 38, 49 n.10 (2016). We understand the phrase "the date the beneficiary's qualification is determined" to mean the date, under the terms of the trust instrument, on which an event occurs to trigger a beneficiary's entitlement under the trust. Here that date was Lillian's death, because Michael could not become a beneficiary until both his parents had died. Upon Lillian's death, Michael became a distributee under the trust and, thus, met the definition of "qualified beneficiary." Until then, he was not a "qualified beneficiary" because the triggering event for his qualification as a beneficiary (Lillian's death) had not yet occurred. Accordingly, the MUTC provides no basis for Michael to quarrel with the trustees' failure to inform him of the existence of the trust prior to Lillian's death on February 27, 2016. It does, however, provide sufficient basis for their duty to inform him thereafter.

 Relying on Baldwin v. Western R.R. Corp., 4 Gray 333, 336 (1855), the trustees argue that -- even if they had a duty to inform Michael of the trust's existence after Lillian's death -- count III

 Page 522 

 should have been dismissed on the alternate ground that Michael failed to allege special damages flowing from the failure to inform him of the trust's existence. See Mass. R. Civ. P. 9 (g), 365 Mass. 751 (1974). Suffice it to say that Baldwin, an old tort case involving a collision between a carriage and a locomotive, provides insufficient steam for the trustees' argument. We think that the theory of damages was adequately pleaded in the FAC, namely, that had Michael been informed of the existence of the trust, he would not have provided repairs, maintenance, and improvements to the property without compensation. That said, since those damages are alleged to have been incurred during Mario's and Lillian's lifetimes and thus before the duty to inform under the MUTC arose, there is no causal connection between Michael's alleged damages and the trustees' alleged violation of the MUTC's duty to inform. Accordingly, to the extent count III rests on the MUTC's duty to inform, it was properly dismissed in its entirety.

 ii. Duty to account. There is both a duty to account imposed by the MUTC, G. L. c. 203E, § 813 (c), and a common-law duty to account. Section 813 (c) requires a trustee to send an account

"to the distributees and permissible distributees of trust income or principal and to other qualified beneficiaries who request it, at least annually and at the termination of the trust."

For the same reasons we have set out above in explaining why the trustees did not have a duty prior to Lillian's death to inform Michael of the trust's existence, they also did not have a duty before Lillian's death to account to him under the MUTC. Specifically, until Lillian died, Michael was neither a distributee, a permissible distributee, nor a "qualified beneficiary." That said, once Lillian died, the trustees did have a duty to account under the MUTC.

 They also had a common-law duty to account from the inception of the trust. It has been long established that a trustee has a duty "to keep clear and accurate accounts with respect to the administration of [a] trust[]." Akin v. Warner, 318 Mass. 669, 674 (1945). See Briggs v. Crowley, 352 Mass. 194, 199-200 (1967). The trustee bears the burden of accounting for the assets of the trust and demonstrating that there has been no misappropriation of or failure to preserve them. See Akin, supra at 674-

 Page 523 

675. See also Rugo v. Rugo, 325 Mass. 612, 617 (1950). A trustee who fails to accurately account for the handling of trust property "must stand the loss." Markus v. Markus, 331 Mass. 394, 399 (1954). See Attorney Gen. v. Bedard, 218 Mass. 378, 385-386 (1914) (trustees "must be charged with everything for which they have not properly accounted" because it is their obligation "to keep the trust fund distinguished from other moneys in their hands"). In an action for an accounting, a court will adjudicate the amount of funds that should be in the possession of a trust, and will determine any amounts for which the trustee is liable to the trust or its beneficiaries. See Milbank v. J.C. Littlefield, Inc., 310 Mass. 55, 61 (1941).

 Michael alleges in the FAC that he did not receive an accounting regarding the trust until February 9, 2018, nearly two years after Lillian's death, and that the failure to account resulted in damages (which he does not specify). To the extent Michael's theory of damages rests on his having provided repairs and maintenance to the property before his parents' death, as we have concluded above, the value of that work was provided to Lillian and Mario, not to the trust. To the extent Michael's theory of damages rests on the allegation that the trustees took various items of personal property (jewelry, electronics, furniture, and cash) from the home after Lillian's death, the claim also falls short because those items are not alleged to have been held by the trust, as opposed to being part of Lillian's estate. [Note 21] But to the extent Michael alleges damages from the trustees' failure to deal properly with the proceeds from the sale of the property, the claim for an accounting was adequately pleaded and should not have been dismissed.

 6. Improper distribution of assets. As set out above, Michael alleged that Donna and Denise took Lillian's personal items for themselves after her death. He asserted that "as an heir," he had an interest in these assets, which were part of Lillian's estate. Accepting these allegations as true, Michael has no claim against Donna and Denise -- in their capacity as trustees -- because there is nothing to suggest that the items were ever assets of the trust. We do not mean to suggest that these allegations might not serve as the basis for a viable claim in another type of suit, for example, one based on the administration of Lillian's estate; 

 Page 524 

however, they fail to sustain a viable claim in this action, which was brought via a general trust petition against Donna and Denise acting as trustees.

 7. Undue influence. The judge dismissed Michael's undue influence claim on alternate grounds. First, she ruled that the claim required an affidavit before it could proceed. Although the judge gave no citation for this proposition, it appears she may have been relying on G. L. c. 190B, § 1-401 (e), which the trustees argued applied. But that provision is part of the Massachusetts Uniform Probate Code, and concerns objections to the probate of an estate. We decline to import the requirements of the Massachusetts Uniform Probate Code to an action, such as this one, challenging the validity of a trust.

 Second, the judge ruled that the FAC failed to state sufficient facts to sustain a claim of undue influence. "Four elements are ordinarily present when undue influence is afoot: that an (1) unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means" (quotation and citations omitted). Goodman v. Atwood, 78 Mass. App. Ct. 655, 658 (2011).

 Read through the required liberal lens beneficial to Michael, the FAC alleges that the trust was the result of undue influence based on the following. Mario and Lillian trusted Donna to handle their financial affairs; Donna controlled their finances, and was much more sophisticated than Mario and Lillian. Lillian often complained that Donna would not allow her to use her assets as she wished. For example, in 2015, Lillian lent Michael a nominal sum, but warned him not to tell Donna because she would become angry. To prevent Lillian from spending her money as she wished, Donna would bully Lillian. At the time the trust was created, Mario had been exhibiting signs of dementia. Both Lillian and Mario were "vulnerable and susceptible" to undue influence.

 Denise, with Donna, arranged for the lawyer who drafted the trust. Denise was present when the trust was executed. Although both Donna and Denise knew about the trust and its terms, they did not inform Michael or his brothers, who were to receive smaller distributions. Denise fabricated a story to make it appear that only Donna had been involved in influencing Mario and Lillian. Specifically, Denise told Michael that she (Denise) had 

 Page 525 

walked out of the office when the trust was being discussed because Donna was "pushing her mother to do something that her mother did not desire to do."

 Neither Mario nor Lillian understood that the property had been placed in a trust, nor did they understand the effect of the trust's terms. This could be seen from the fact that, in or around 2013, Mario told Michael to sell the house (which neither Mario nor Michael could have done since it was in the trust). Similarly, in 2012, Lillian executed a will that would have created a new trust for the benefit of her husband even though he had already moved to an assisted living facility. According to Michael, this, too, demonstrated that Lillian did not understand that the property had previously been transferred to an irrevocable trust, let alone one created for the specific purpose of avoiding having it counted for Medicaid eligibility. [Note 22] See 42 U.S.C. § 1396p(d)(3)(A)(i); 130 Code Mass. Regs. §§ 520.007 & 520.023(C)(d) (1999).

 Although this constellation of allegations may not make out the strongest claim of undue influence, it was sufficient to get over the low bar required to withstand a motion to dismiss. See, e.g., Estate of Moretti, 69 Mass. App. Ct. 642, 652-659 (2007) (sufficient evidence of undue influence).

 8. Miscellaneous additional matters. Two additional issues may be dealt with briefly. First, Michael argues in the alternative either that (1) the judge did not rule on his second motion to further amend the complaint and that we should allow that motion ourselves, or (2) the motion was constructively denied, and we should reverse that denial as an abuse of discretion. In light of our disposition of the issues we have already discussed, the better course is to allow the judge on remand to consider and rule in the first instance on the second motion to amend. If the judge allows the motion, the judge may also consider whether the proposed amended complaint materially alters or expands the allegations and claims of the FAC such that a new citation and additional service is required under supplemental rule 3.

 Page 526 

 Second, in light of our decision allowing certain portions of the FAC to proceed, we vacate the award of attorney's fees in favor of the trustees, while offering no opinion as to whether an award of fees and costs is in order after further proceedings on remand. We recognize that the judge ruled on the motion at our request, and that our request caused the already-busy judge additional work. However, the problem stemmed from the fact that the motion remained pending and no final judgment had entered before the parties were allowed to appeal.

 Conclusion. The judgment of dismissal entered May 3, 2019, and the further amended judgment entered July 26, 2021, (collectively, judgments) are affirmed with respect to count I (breach of the duty of loyalty), count IV (improper distribution of assets), and count V (quantum meruit). Both judgments are vacated as to count VI (undue influence), as is the award of attorney's fees and costs to the trustees in the July 26, 2021 further amended judgment. The judgments as to count II (breach of the duty of care) and count III (duty to inform and account) are affirmed in part and vacated in part. As to count II, the judgments are affirmed except to the extent that the claim is based on the alleged failure of the trustees to have their attorney timely release the proceeds from the sale of the property. That portion of the judgments on count II is vacated. As to count III, the judgments are affirmed insofar as the claim alleges breach of the duty to inform and breach of the duty to account, except as to the duty to account for the proceeds of the sale of the property. That portion of the judgments on count III is vacated. The matter is remanded for further proceedings consistent with this opinion. [Note 23]

 So ordered.

FOOTNOTES
[Note 1] Shortly before the appeal was argued, the panel realized that final judgment had not entered in the trial court and, moreover, that there remained a pending motion to amend the judgment to award attorney's fees and costs. Accordingly, after oral argument, the panel stayed the appeal and directed the judge to rule on the pending motion so that final judgment could enter and the appeal could proceed. To avoid inefficiency and unnecessary cost and delay for the litigants, we also indicated that the parties could appeal any order regarding the fees, and that any such appeal would be consolidated with this one. For reasons that are unexplained, the Probate and Family Court register's office did not docket our order, or bring it to the judge's attention. Once we became aware of this failure, we issued a second order, which we sent to both the register's office and to the judge herself. The judge then acted with due speed and attention. Thereafter, the petitioner filed a timely notice of appeal of the fee order. The two appeals were consolidated. 

[Note 2] For convenience, because many of the parties share the same surname, we refer to them by their first names. 

[Note 3] As we discuss infra, there are specific notice requirements for actions that are commenced by filing a general trust petition under § 201. See also G. L. c. 203E, § 201 (d) ("A proceeding brought under this chapter in the probate and family court department to appoint or remove a trustee, to approve the resignation of a trustee, to review and settle accounts of a trustee or concerning any other matter relating to the administration of a trust may be initiated by filing a petition and giving notice to interested parties, as provided in section 109"). 

[Note 4] Because the action was not begun with a complaint, the document styled an "amended complaint" is more properly considered in essence to be an amended attachment to the trust petition. Nonetheless, for the sake of consistency with the way the parties and the judge have referred to it, we call it the first amended complaint or FAC. 

[Note 5] The judge took into account the allegations of the FAC, although she never allowed Michael's motion to file it. 

[Note 6] Michael stipulated to the dismissal of the claims against Diane, and she is not a party to this appeal. 

[Note 7] The FAC does not allege the specific date the property was transferred into the trust; however, the quitclaim deed is in the appellate record and the parties do not dispute the date. 

[Note 8] Mario Colecchia died in 2015. 

[Note 9] Michael does not argue that the sale was for less than fair market value, nor does there appear to be any question that the sale was at arm's length. 

[Note 10] Michael has not included copies of the motion, or of the memorandum supporting it, in the appellate record. See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019). 

[Note 11] The judgment did not address count III explicitly. 

[Note 12] This motion, and the amended judgment resulting therefrom, reflected the explicit dismissal of count III. 

[Note 13] Supplemental rule 6 provides, in pertinent part: 

"C. Service within the Commonwealth. Except where otherwise required by statute or ordered by the court, service of a citation within the Commonwealth shall be given by delivering in hand or by mailing by certified, registered or ordinary first class mail at least fourteen (14) days before the return day.

"D. Service outside the Commonwealth. Except where otherwise required by statute or ordered by the court, if it shall appear from the petition that there is anyone interested who is outside the Commonwealth in any part of the United States, its Commonwealths or territories, service of the citation shall be given by delivering in hand or by mailing by certified, registered or ordinary first class mail at least fourteen (14) days before the return day; if in other parts, one (1) month.

"E. Service When Whereabouts Unknown. Except where otherwise required by statute or ordered by the court, if it shall appear from the petition that there is anyone interested who is of parts unknown, service of the citation shall be given by delivery or mailing to the last known address at least one (1) month before the return day.

"F. Service by Publication. Except where otherwise required by statute or ordered by the court, and in addition to the service requirements above, publication shall be required if any interested person's whereabouts, address or identity is unknown. Publication shall also be required in all formal testacy and appointment proceedings. A copy of the citation shall be published once in a newspaper designated by the register of probate having general circulation in the county where the proceeding is pending at least seven (7) days before the return date."

[Note 14] One of the beneficiaries in this case is said to live out of State, and another is said to have no known address. 

[Note 15] Supplemental rule 3 provides in pertinent part: 

"When notice of a petition has been given by service of a citation, notice of any pleading asserting new or additional claims for relief not asserted in the original petition shall be given by service of a new citation."

[Note 16] The preprinted form also refers to Rules 2, 6, and 28 of the Supplemental Rules of the Probate Court. Supplemental rule 2 deals with the filing of appearances, and supplemental rule 28 deals with signatures to pleadings; neither rule has any application to the issues presented in this case. 

[Note 17] General Laws c. 190B, § 1-401, provides: 

"(a) If notice on any matter is required by reference to this section and except for specific notice requirements as otherwise provided, the court shall fix a return date and issue a citation. The petitioner shall cause notice of the return day of any matter to be given to any interested person or attorney if the appearance is by attorney or the interested person requested that notice be sent to the attorney. Notice shall be given:

"(1) by mailing a copy of the citation at least 14 days before the return date by certified, registered or ordinary first class mail addressed to all interested persons who have not assented in writing or their attorney if the appearance is by attorney or the interested person requested that notice be sent to the attorney at the person's office or place of residence, if known; or

"(2) by delivering a copy of the citation to the person being notified personally at least fourteen days before the return date; or

"(3) by publishing a copy of the citation once in a newspaper designated by the register of probate having general circulation in the county where the proceeding is pending or in a newspaper designated by the register of probate in a county identified by the court, the publication of which is to be at least 7 days before the return date.

"(b) The court for good cause shown may provide for a different method or time of giving notice for any return date."

[Note 18] Michael also argues that the trustees breached their duty of care by failing to pursue a claim against the trust's attorney under G. L. c. 221, § 51, which provides in full: 

"An attorney at law who unreasonably neglects to pay over money collected by him for and in behalf of a client, when demanded by the client, shall forfeit to such client five times the lawful interest of the money from the time of the demand."

However, this theory of the claim was not asserted in the original trust petition or in the FAC and, therefore, we will not consider it for the first time now. Michael did raise the claim in his proposed second amended complaint, the filing of which was never allowed. However, the allegations of that subsequent pleading cannot be considered in evaluating the correctness of the judge's rulings dismissing the claims of the earlier complaints.

[Note 19] Examples of clauses expressly shielding trustees from liability can be seen in many cases, including, for example, Rutanen v. Ballard, 424 Mass. 723, 725 (1997); New England Trust Co. v. Triggs, 334 Mass. 324, 329 (1956); New England Trust Co. v. Paine, 320 Mass. 482, 484 (1946); Passero, 92 Mass. App. Ct. at 81; Marsman v. Nasca, 30 Mass. App. Ct. 789, 791 (1991). 

[Note 20] Section 66 of St. 2012, c. 140, provides: 

"(a) Except as otherwise provided in this act:

"(1) this act shall apply to all trusts created before, on or after the effective date of this act;

"(2) this act shall apply to all judicial proceedings concerning trusts commenced on or after the effective date;

"(3) an action taken before the effective date of this act shall not be affected by this act.

"(b) If a right is acquired, extinguished or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of this act, that statute shall continue to apply to the right even if it has been superseded."

[Note 21] Indeed, the FAC appears to acknowledge that those items were part of the estate. 

[Note 22] We offer no opinion as to whether the terms of the trust would, in fact, shield its res from being counted for Medicaid eligibility, see generally Guilfoil v. Secretary of the Executive Office of Health & Human Servs., 486 Mass. 788 (2021), as that is a matter that is not presented here. The creation of the trust for purposes of Medicaid eligibility is, in the context of the undue influence claim, merely asserted as an example of Lillian's lack of understanding of her affairs when combined with a later will that Michael contends contains inconsistent terms. 

[Note 23] The trustees' request for appellate attorney's fees pursuant to G. L. c. 215, § 45, is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.