NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1261

IN THE MATTER OF THE ROBERT A. KANGAS TRUST.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Rosemary A. Portrait appeals from a decree and order of the Probate and Family Court, on the petition of her brother Kurt Kangas, removing her as trustee of the Robert A. Kangas Trust (the trust) and ordering her to file an inventory and accounting of income and assets of the trust.[1]  We affirm.

Background.  On July 26, 2012, spouses Robert A. Kangas and Mary V. Kangas executed several documents in furtherance of an estate plan.  Mary deeded her interest in their home in Medford (the property) to Robert.  Robert established the trust, which was irrevocable, and then deeded the property to the trust. Article 2.1 of the trust document provides that the trust was "for the benefit of . . . Mary . . . for the term of her life."

_____

[1] Because many of the parties share the same surname, we refer to them by first names.

Article 2.4 provides that upon Mary's death, the trust "shall terminate" and the property and any accumulated income "shall be distributed" to their children Rosemary and Kurt.  On the same date, Rosemary signed a trustee's certificate, agreeing to serve as trustee of the trust.

Robert died in August 2012.  In 2018, Mary executed a deed (2018 deed) that purported to transfer the property to Rosemary. Mary died in September 2022.

In January 2023, Kurt filed a general trust petition requesting that the Probate and Family Court remove Rosemary as trustee and appoint a successor trustee, order Rosemary as trustee to provide an accounting of the trust property, and declare the 2018 deed void.  Rosemary filed an affidavit of objections asserting that that it was Mary's intent that Rosemary should inherit the property.  Kurt moved for summary judgment, which Rosemary opposed.[2]  After a hearing, a judge entered a decree removing Rosemary as trustee and appointing a successor trustee who was ordered to terminate the trust by

---

[2] On the day before the summary judgment hearing, Rosemary filed a memorandum in opposition that largely reiterated the arguments in her affidavit of objections.  On Kurt's motion, the judge struck the memorandum as untimely filed.  Rosemary has moved to expand the appellate record to include that memorandum. Having reviewed the memorandum, we discern no error in the judge's order striking it, particularly because the arguments in it are cumulative of those elsewhere in the record.

selling the property and distributing the proceeds.  The judge

also ordered Rosemary to file an inventory and accounting of all

income and assets of the trust from September 1, 2012, to the

date of the accounting.  The judge found that the 2018 deed was

invalid, as it purported to convey the property that Mary did

not own.  This appeal ensued.[3]

Discussion.  We review de novo the judge's decree and order

on the petitioner's motion for summary judgment.  See Barbetti

v. Stempniewicz, 490 Mass. 98, 107 (2022).

Power of successor trustee to sell the property.  Rosemary

argues that the judge erred in ordering the successor trustee to

sell the property.  She contends that the judge lacked the

authority to do so because the trust document did not authorize

a sale of the property once the trust was terminated, and Kurt

did not request in his trust petition that the property be sold.

The interpretation of a trust "is a matter of law to be

resolved by the court."  Ferri v. Powell-Ferri, 476 Mass. 651,

654 (2017).  "When interpreting trust language, . . . we do not

read words in isolation and out of context.  Rather we strive to

---

[3] Pending this appeal, Rosemary moved for a stay of the
Probate and Family Court decree, which the judge denied.
Rosemary then moved pursuant to Mass. R. A. P. 6 (a), as
appearing in 481 Mass. 1608 (2019), for a single justice of this
court to issue a stay pending appeal.  The single justice denied
the motion for a stay, and Rosemary did not appeal from the
denial.  In those circumstances, we do not consider any issue as
to the denial of a stay pending appeal.

discern the settlor's intent from the trust instrument as a whole." Hillman v. Hillman, 433 Mass. 590, 593 (2001). "[W]here the language of a trust is clear, we look only to that plain language." Ferri, supra.

Rosemary does not dispute that during Mary's lifetime the trustee had the power to sell the property. However, Rosemary argues that Article 2.4 of the trust narrows the trustee's powers after Mary's death, precludes the successor trustee from selling the property and limits the successor trustee to conveying the property to Rosemary and Kurt jointly. We are not persuaded. Reading the trust document as a whole, and giving due weight to all of its language, we conclude that it permits the successor trustee to sell the property.

Article 2 of the trust, titled "Distribution of Trust," explains how the trust is to be distributed. Article 2.4 states that upon Mary's death, "the Trust hereunder shall terminate, and the then-remaining Trust Property, together with accumulated income, if any, shall be distributed to Rosemary . . . and Kurt." Merely because Article 2.4 uses the verb "distribute" does not preclude the successor trustee from selling the property. Indeed, Article 2.2 provides:

> "The Trustee shall have the power . . . to sell or retain
> such real estate as may be a part of this Trust Estate as
> my said Trustee shall deem necessary or advisable[;] . . .
> provided however, my Trustee shall have the power to retain
> or dispose of any real estate which may be a part of the

4

Trust herein created, which in the sole discretion of the Trustee, is necessary or advisable for the benefit of the beneficiary."

Because Article 2.2 plainly empowers the successor trustee to sell the property, we conclude that the term "distribute" in Article 2.4 encompasses the sale of the property.

Moreover, the trust document provides that the powers of the trustee enumerated in Article 10 are "in addition to and not in limitation of all common law and statutory authority." Thus the trust document incorporates the powers granted to a trustee pursuant to the Massachusetts Uniform Trust Code (MUTC), which became effective on July 8, 2012, less than three weeks before Robert established the trust. St. 2012, c. 140, § 56. See Schwalm v. Schwalm, 102 Mass. App. Ct. 825, 827 (2023). Pursuant to the MUTC, the trustee has "any . . . powers appropriate to achieve the proper . . . distribution of the trust property," G. L. c. 203E, § 815, including the power to "sell property," G. L. c. 203E, § 816 (2), and, upon termination of the trust, has "the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it." G. L. c. 203E, § 816 (27). We conclude that the successor trustee's powers include the authority to sell the property.

Rosemary misplaces her reliance on T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 572-574 (2010), and Heard v.

5

Read, 171 Mass. 374, 378 (1898). Those cases predate the enactment of the MUTC. Prior to the MUTC, when a trust terminated, "absent a specific grant of authority in the trust, the trustee ha[d] the power and obligation only to preserve the trust property while winding up the trust and delivering any trust property to the beneficiary." T.W. Nickerson, Inc., supra at 572-573. See also Heard, supra at 377-378 (on termination of a trust, "the trustees . . . have . . . no power . . . to sell the real estate for the purpose of dividing the proceeds"). Because the MUTC grants a trustee broad authority including the power to "sell property," G. L. c. 203E, § 816 (2), those cases are inapposite.

Beyond that, on the facts of this case the MUTC permitted the judge to order the successor trustee to sell the property as a remedy for Rosemary's breach of her duties as trustee. The MUTC provides that, as remedy for breach of trust, a judge may order "any . . . appropriate relief." G. L. c. 203E, § 1001 (b) (10). The judge found that Rosemary committed a breach of trust because she "refused to . . . distribute the assets" of the trust and "inappropriately advance[d] . . . that the property . . . should not be disbursed as required by the terms of the Trust but rather to her in her name individually." We conclude that the judge properly ordered the successor trustee to sell the property and distribute the proceeds.

6

Rosemary argues that the judge could not order the sale of the property because Kurt's general trust petition did not request it. The argument is unavailing. The MUTC provides that a court "may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person." G. L. c. 203E, § 201. Although Kurt's general trust petition did not specifically request the court to order the sale of the property, it did assert that "appointment of a successor Trustee is necessary to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with [the MUTC]." That good-faith administration of the trust plainly encompassed sale of the property. See Matter of Colecchia Family Irrevocable Trust, 100 Mass. App. Ct. 504, 508 (2021) (Colecchia) ("[A] general trust petition may be used to invoke the court's jurisdiction over any matter of trust administration").

Trustee's obligation to provide accounting. Rosemary argues that the judge erred in ordering her to file an accounting of the trust assets. She does not dispute that after Mary's death in September 2022, the trust instrument required her as trustee to provide Kurt with an annual accounting, but she contends that the judge erred in ordering an accounting from the period beginning September 1, 2012, because such an accounting would be unduly burdensome.

7

As trustee, Rosemary had "a common-law duty to account from the inception of the trust."  Colecchia, 100 Mass. App. Ct. at 522.  That included the "duty 'to keep clear and accurate accounts'" of the assets of the trust.  Id., quoting Akin v. Warner, 318 Mass. 669, 674 (1945).  See also Schwalm, 102 Mass. App. Ct. at 622.  "The trustee bears the burden of accounting for the assets of the trust and demonstrating that there has been no misappropriation of or failure to preserve them." Colecchia, supra.

Rosemary's duty as trustee to maintain the records of the trust's receipts and expenditures is "a separate obligation" from her duty to provide those records to the beneficiaries. Schwalm, 102 Mass. App. Ct. at 622.  Article 6.1 of the trust required Rosemary as trustee to render an accounting of the trust to the beneficiary "annually."  And the MUTC required Rosemary as trustee to render an accounting "at least annually and at the termination of the trust" to distributees of trust income or principal and to other qualified beneficiaries who request it.  G. L. c. 203E, § 813 (c).  See Colecchia, 100 Mass. App. Ct. at 522.

Once Kurt became a qualified beneficiary of the trust upon Mary's death, he was entitled to request an accounting of the trust, as he did in his general trust petition.  See Schwalm, 102 Mass. App. Ct. at 622; Colecchia, 100 Mass. App. Ct. at 521-

8

522.  The judge did not abuse her discretion in ordering Rosemary to provide that accounting to Kurt for the period dating back to September 1, 2012.  Ordering Rosemary to fulfill an obligation she already had at common law, under the terms of the trust, and pursuant to the MUTC is not unduly burdensome.[4]

<u>Decree and Order of general Trust Petition affirmed.</u>

By the Court (Shin, Grant & Smyth, JJ.[5]),

*Paul Little*

Clerk

Entered:  October 10, 2024.

---

[4] Kurt's request for attorney's fees and costs is denied.

[5] The panelists are listed in order of seniority.